**Robert Howard JONES, Plaintiff,**

v.

**PTL. D. MARCUM, et al., Defendants.**

**Case No. C–3–00–335.**

United States District Court,
S.D. Ohio,
Western Division.

March 11, 2002.

Patrick Allen, Middletown, OH, for plaintiff.

Robert Surdyk, Dayton, OH, Nicholas Subashi, Dayton, OH, for defendants.

**DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART MOTION OF KETTERING DEFENDANTS FOR SUMMARY JUDGMENT (DOC. # 16); SUSTAINING MOTION FOR PARTIAL SUMMARY JUDGMENT OF DEFENDANTS MCNALLY AND HAWKINS (DOC. # 17); OVERRULING MOTION TO STRIKE OF DEFENDANT PETERS (DOC. # 18); AND SUSTAINING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT PETERS (DOC. # 18)**

RICE, Chief Judge.

Plaintiff Rob Jones ("Jones") brought an action under 42 U.S.C. § 1983 and for the common law torts of assault and battery. The action was filed in the Montgomery County (Ohio) Common Pleas Court, and removed to this Court by Defendants: the City of Kettering; the City of Kettering Board of Commissioners; the City of Kettering Police Department ("KPD"); the Fraze Pavilion; Officer David Marcum ("Officer Marcum"); Officer Phillip Wabler ("Officer Wabler"); Officer James Bodner ("Officer Bodner"); Officer E. Simoni ("Officer Simoni"); Thomas McNally ("McNally"); Scott Hawkins ("Hawkins"); Joseph Peters ("Peters"); and various John Does.

Defendants other than McNally, Hawkins, Peters, and the Fraze Pavilion[1] will be referred to by the Court as the Kettering Defendants. As pled, Jones' cause of action arising under 42 U.S.C. § 1983 is applicable only to McNally, and Officers

---

1. The Fraze Pavilion is represented by the same counsel as that for the Kettering Defendants. Additionally, it has been represented that the City of Kettering owns the Fraze Pavilion. (*See* Doc. # 17 at 2.) Nevertheless, the Fraze Pavilion is not named in the Kettering Defendants Motion, and no mention is made of it therein. As such, nothing stated herein should be understood by the parties as being applicable to the Fraze Pavilion.

Marcum, Wabler, and Bodner. (*See* Compl. (attached to Doc. # 1) ¶ 24.)

This dispute arises out of a purported melee at the Fraze Pavilion, an entertainment venue in Kettering, Ohio, between Jones and the various individual Defendants. After being escorted or forced away from the venue, at which pop singer Rick Springfield was performing, Jones alleges that he was treated with excessive force by the Fraze Pavilion security staff and the KPD officers. Jones was subsequently arrested, charged, and convicted for resisting arrest, in the Kettering Municipal Court, after having pled "no contest."

In separate Motions, the Kettering Defendants and Peters move for summary judgment. In a third Motion, McNally and Hawkins move for partial summary judgment on the § 1983 claim. The Kettering Defendants argue that there is no evidence that Officer Bodner was involved in the alleged melee that gives rise to this action; that the KPD cannot be sued as its own entity; that the City of Kettering is immune from tort liability; that Officers Wabler, Marcum, and Bodner are immune from tort liability;[2] that Officers Wabler, Marcum, and Bodner are entitled to qualified immunity from § 1983 liability; and that the issue of the legality of the amount of force used by the officers during Jones' arrest has already been decided and should not be revisited herein. In his Motion, Peters contends that he was not involved in the purported melee and therefore should not be held liable under either cause of action. In their Motion, McNally and Hawkins contend that they cannot be held liable under § 1983 because they were not acting under color of law.

Jones does not dispute McNally's and Hawkins' argument, and does not dispute Peters' argument to the extent it concerns § 1983 liability. He opposes Peters' argument to the extent it concerns liability for assault and battery. He does not respond to the Kettering Defendants' Motion to the extent it concerns Officer Bodner or the immunity from tort liability of the KPD and the individual officers. He opposes their Motion to the extent it concerns the issue of the qualified immunity of the individual officers vis-a-vis his § 1983 claim, and to the extent the Kettering Defendants argue that the use of force issue is precluded by his state criminal conviction for resisting arrest.

## I. *Factual Background*[3]

On the night of June 5, 1999, around 10:30, Jones and a friend went to the Fraze Pavilion with the intention of listening to the end of a concert being given jointly by pop acts Rick Springfield and Air Supply. (Jones Depo. at 40.) Neither person had tickets to the concert. (*Id.*) Jones' "plan" was simply to walk around the pavilion and listen to the music. (*Id.*) Jones was acquainted with a person who he believed worked for Rick Springfield's management company, and, out of curiosity, he asked a Fraze Pavilion employee if he was familiar with that management company. (*Id.* at 53.) Unable to answer his question, the employee directed him to the will call window. (*Id.* at 54.) Jones looked for, but did not find, that window. (*Id.* at 56.) Another employee at the main entrance to the pavilion informed Jones

---

**2.** Officer Simoni, a nominal party to the Kettering Defendants' Motion, has been dismissed. (*See* Doc. # 31 & Notation Order of Nov., 5, 2001.)

**3.** For purposes of ruling on the Defendants' Motions for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the Plaintiff, who is the nonmoving party.

that the will call window was closed. (*Id.* at 56–57.)

As Jones and his friend walked back whence they came, they noticed an entrance to the pavilion, and they entered. (*Id.* at 58.) Inside the pavilion, they walked to a point about 100 feet from the stage. (*Id.* at 60.) After five minutes, a male pavilion employee asked them to step out of the aisle. (*Id.* at 61.) A few minutes later, another male employee asked them to do the same or return to their seats. (*Id.* at 62–63.) During a verbal exchange between Jones and this employee, Jones revealed that he and his friend did not have seats. (*Id.* at 63.) In response, they were told to leave the venue. (*Id.*) They left through an exit different from the entryway through which they entered (*id.* at 64), and the employee who had asked them to leave followed them out. (*Id.* at 68.)

Outside of the pavilion, Jones asked the employee what was the problem of their standing in the aisle, and the employee responded by bumping chests with Jones. (*Id.* at 69–70.) A few minutes later, after Jones and his friend had reached his car, that same employee, along with two other Fraze Pavilion employees, all males, "jumped" Jones. (*Id.* at 72.) Jones had not tried to punch any of them prior to being jumped. (*Id.* at 77.) The three employees tackled him to the ground and "pounded" his head into the street. (*Id.* at 78.) Jones responded verbally with profanity. (*Id.* at 80.) Jones' friend remained standing near his car during the incident. (*Id.* at 82.) At some point, the police were summoned, and by the time they arrived, about two minutes after they were summoned, Jones was standing, no longer restrained. (*Id.* at 83, 84.)

When the police arrived, Jones was "shoved forcefully" and "pinned" against the rear of a limousine parked nearby, so that his face was pressed against the car.

(*Id.* at 86, 87, 89.) Prior to that time, the police had not made any verbal contact with Jones. (*Id.* at 87, 88.) Subsequently, he was given a bear hug by one of the officers and thrown to the ground. (*Id.* at 89.) At the time, he had not been formally placed under arrest. (*Id.* at 90.) When on the ground, Jones rolled over onto his back, and was pinned to the ground by two officers, with the assistance of a Fraze Pavilion employee who administered a choke hold on Jones' neck. (*Id.* at 92, 93.) Jones was then rolled to one side and asked to place his arms behind his back, after which he was handcuffed. (*Id.* at 94–95.) He had still not been placed under arrest. (*Id.* at 95.)

Jones was eventually transported in a police cruiser to jail. (*Id.* at 98–99.) He remembers having his handcuffs removed because he felt a pain in his left wrist. (*Id.* at 99.) At no point did the police use any weapons. (*Id.* at 113.) However, because of the force used by either the Fraze Pavilion employees or the Kettering police officers, Jones did sustain several abrasions. (*Id.* at 113–26.)

## II. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the

absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")(quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T*

*Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Motion of Kettering Defendants for Summary Judgment* (Doc. # 16)

The Kettering Defendants raise a number of arguments, and the Court will consider them in turn.

#### A. *Officer Bodner*

The Kettering Defendants contend that Officer Bodner had no contact with Jones at any point during the chain of events in question. Jones did not respond to this argument; he did not direct the Court's attention to that portion of the record demonstrating Officer Bodner's involvement. Although named in paragraphs 16 and 24 of the Complaint as a participant in the incident at issue, the Court has found no evidence or mention of Officer Bodner's physical involvement with Jones to substantiate the allegations. Accordingly, as to Officer Bodner, the Kettering Defendants' Motion is well taken, and it is SUSTAINED.[4]

---

4. To the extent the Kettering Defendants' remaining arguments concern Officer Bodner, the Court need not make note of that fact. Of course, to the extent the Court's subsequently noted decisions are favorable to Officers Wabler and Marcum, they would also be so to Officer Bodner.

#### B. *Kettering Police Department*

■ The Kettering Defendants argue that the Kettering Police Department cannot be held liable independently of the City of Kettering itself. Jones did not respond to this argument and the Court agrees. Police departments are not *sui juris;* they are merely sub-units of the municipalities they serve. *See Williams v. Dayton Police Dept.,* 680 F.Supp. 1075, 1080 (S.D.Ohio 1987). Accordingly, as to the Kettering Police Department, the Kettering Defendants' Motion is SUSTAINED.

#### C. *City of Kettering*

Noting that only the assault and battery claim applies to the City of Kettering itself, the Kettering Defendants argue that the City is immune from tort liability pursuant to Ohio Rev.Code § 2744.02. Jones' only argument on this issue is that Ohio's political subdivision immunity does not shield the City of Kettering with respect to his § 1983 cause of action. Of course, consistent with the fact that the § 1983 cause of action does not apply to the City of Kettering, a fact Jones does not dispute, the City of Kettering never suggested that it was immune from § 1983 liability by virtue of Ohio Rev.Code § 2744.02.

■ Section 2744.02 provides political subdivisions with immunity from tort liability. Said immunity is excepted in five situations, none of which is applicable to the facts and circumstances of this case. Thus, the Court finds that there are no genuine issues of material fact on the question of the City of Kettering's tort liability. The Kettering Defendants' argument on this issue is well taken, and, ac-

cordingly, as to the City of Kettering, their Motion is SUSTAINED.

### D. *Officers Wabler and Marcum—Statutory Immunity*

In similar fashion, Officers Wabler and Marcum argue that they are immune from tort liability by virtue of Ohio Rev.Code § 2744.03, as to the assault and battery claim against them. As he did with respect to the City of Kettering, Jones responds to this argument only by stating that statutory immunity does not shield the individual officers from § 1983 liability. Again, however, nothing in Defendants' argument suggests that it does.

■ Regarding the actual issue, that of the officers' immunity from tort liability, § 2744.03 provides employees of political subdivisions with immunity from tort liability, subject to three exceptions. One of those exceptions is where it is found that the "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner...." Ohio Rev. Code § 2744.03(A)(6)(b). For the reasons stated below with respect to the Court's discussion of qualified immunity, the Court believes that a genuine issue of material fact exists as to whether Officers Wabler and Marcum acted in such a manner. Accordingly, the Court does not find the Kettering Defendants' argument on this issue well taken. Thus, as to Officers Wabler and Marcum, and with respect to Jones' claim for assault and battery, the Kettering Defendants' Motion is OVERRULED.

### E. *Officers Wabler and Marcum—Qualified Immunity*

The Kettering Defendants argue that Officers Wabler and Marcum are entitled to qualified immunity insofar as they are implicated by Jones' § 1983 cause of action. The Court disagrees.

■ A brief review of the law in this area is in order before proceeding with the analysis. 42 U.S.C. § 1983 provides a civil cause of action to any citizen of the United States against any person who, under color of state law, deprives the citizen of "any rights, privileges, or immunities secured by the Constitution and laws of the United States." *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991) (citations omitted). In order to succeed on a § 1983 claim, a plaintiff must prove two elements: (1) that he was deprived of a right secured by the Federal Constitution or laws of the United States; and (2) that he was subjected to this deprivation by a person acting under the color of state law. *See Searcy v. City of Dayton* 38 F.3d 282, 286 (6th Cir.1994). "By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir.2000)(citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

Herein, the issue is not whether Officers Wabler and Marcum were acting under color of law; only whether they violated a right secured to Jones by the Constitution or the laws of the United States. Jones alleges that the officers used excessive force in violation of the rights guaranteed to him by the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Properly analyzed, the basis for his § 1983 claim of excessive force comes under the rubric of the Fourth Amendment, "which guarantees citizens the right to be secure in their persons." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotation omitted). As such, whether an officer's use of force is excessive must be analyzed under the Fourth Amendment's "reasonableness" standard. *Id.* at 395, 109 S.Ct. 1865. "[S]ome degree of physical coercion or threat thereof" is constitutionally ac-

ceptable when police officers are effecting a stop or full arrest. *Id.* at 396, 109 S.Ct. 1865. Importantly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal quotation and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865.

The Kettering Defendants do not argue that there are no facts giving rise to a genuine issue of material fact as to the reasonableness of the conduct of Officers Wabler and Marcum, such that a jury could not find them liable for violating the strictures of the Fourth Amendment; they argue only that when viewed in light of the law surrounding use of excessive force, the officers' actions could have been understood by them at the time of the incident in question as being reasonable. As such, they argue they are entitled to immunity from suit. Jones disagrees with their position. Both parties rely on the same authority for support.

■ In the interest of protecting public officers in the course of performing their discretionary duties from unduly onerous lawsuits under § 1983, the Supreme Court has recognized "qualified immunity" for such officers, "shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, in order for public officer to be held accountable, the right she is charged with violating must be clearly established, and be one of which a reasonable officer in her position would have

known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396. Furthermore, the "clearly established law" that forms the focal point of the Court's inquiry must be defined with particularity, and not in the abstract. *See Anderson, supra,* at 639–40, 107 S.Ct. 3034. For instance, it is not enough to say that because the *general* right to due process as guaranteed by the Due Process Clause is clearly established, any *specific action* later found to be violative of the Due Process Clause is *per se* violative of a "clearly established" right. *See id.* at 639, 107 S.Ct. 3034. Rather, a court must more closely scrutinize "the contours" of the right allegedly violated; it must attempt to analyze the right allegedly violated in a particularized, less generalized, context, i.e., in light of the specific facts of the lawsuit under scrutiny. Thus, the relevant question is whether an officer could have reasonably believed that her actions were lawful, in light of the facts and the law as generally understood at the time of her action. *See id.* at 641, 107 S.Ct. 3034.

Importantly, the *Anderson* Court held that even where an action could be deemed objectively unreasonable within a Fourth Amendment analysis, when construing the evidence most strongly in favor of the defendant (such that a court would generally leave the question, i.e., the genuine issue of material fact on the issue of excessive force, for the jury), that determination does not therefore require a determination that the action could not in any respect have appeared appropriate and reasonable to a reasonable officer at the time. *Id.* at 643–44, 107 S.Ct. 3034. Thus, while reasonableness in the Fourth Amendment context will frequently be left to the trier of fact to determine, reasonableness in the qualified immunity context "ordinarily should be decided by the court long before trial." *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

The distinction in the latter context is that the analysis turns on the legal issue of whether the law surrounding the particularly defined set of facts was "clearly established," such that no reasonable officer could have thought that her actions were reasonable. *See also Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)(reaffirming that the Fourth Amendment reasonableness inquiry and the qualified immunity reasonableness inquiry are not one and the same).

Because both Plaintiff and the moving Defendants rely upon *Saucier* to support their respective arguments, the Court will turn to that case. *Saucier* reaffirmed a principle previously announced in *Anderson*,[5] to wit, even if it is conceded that a genuine issue of material fact exists

on the question of whether officers used excessive force, the law may not be so well established as to that particular set of facts to enable a court to conclude that in all instances, a reasonable officer would necessarily recognize that her conduct is unreasonable, and thus impermissible and unconstitutional.[6] *"Graham* does not always give a clear answer as to whether a particular application of force will be deemed excessive by the courts." *Id.* at 2158.

In *Saucier*, the lower courts had determined that because a genuine issue of material fact existed as to whether the defendant officer had used excessive force, it could not be determined by the district court on summary judgment that the officer's conduct was reasonable and that he

---

**5.** The only distinction between the two cases is that *Anderson* concerned an alleged probable cause violation while *Saucier* concerned alleged use of excessive force. As a jury's evaluation of the "reasonableness" of the officer's actions in both situations is governed by the Fourth Amendment, the issues are identical from a constitutional perspective. *See Saucier*, 121 S.Ct. at 2158–59.

**6.** In another Fourth Amendment context, that concerning probable cause, Judge Posner, of the Seventh Circuit, found "surprising" the suggestion that qualified immunity lends an "additional layer of protection" to a police officer even after it has been determined that there exists a genuine issue of material fact as to whether he arrested the § 1983 plaintiff without probable cause. *See Boyce v. Fernandes*, 77 F.3d 946, 948 (7th Cir.1996)(Posner, J.). Because the Fourth Amendment standard for determining whether probable cause existed is already one of "objective reasonableness," asking a second time whether a reasonable police officer could have believed he had acted lawfully, after conceding that a trier of fact could determine that he did not, is to equate the qualified immunity test, within a "wrongful arrest" scenario, with the question of whether there was "probable cause to have probable cause." *Mahoney v. Kesery*, 976 F.2d 1054 (7th Cir.1992)(Posner, J.).

That the determination of whether probable cause exists should dovetail with the determination of whether qualified immunity should attach is sensible. Nevertheless, *Anderson*, *Hunter*, and most recently *Saucier*, all clearly state that a police officer may be entitled to immunity even if it is determined that his actions could be viewed by a jury as objectively unreasonable. The critical distinction between the probable cause and qualified immunity determination, which Judge Posner failed to address in *Boyce* and *Mahoney*, is that qualified immunity is reserved for those instances where, even assuming the truth of the facts as submitted by the plaintiff, the allegedly violated right protected under the law is not "clearly established" in that particular factual setting. This is a legal question. It may be characterized as an "additional layer of protection," but it exists to protect officers who are acting in novel situations, so that, while it may be determined that a genuine issue of material fact exists as to whether the officer acted "objectively reasonably" (i.e., with probable cause), the court may preempt the potential negative finding as a matter of law in the interest of affording officers a reasonable degree of discretion when operating in unchartered waters. This holds true in any Fourth Amendment context, whether the issue is probable cause, excessive force, etc.

was entitled to qualified immunity. The Supreme Court reversed. The genuine issue of fact was whether the military police officer's "gratuitously violent" shoving of the § 1983 plaintiff, administered when that officer placed the § 1983 plaintiff into a van to whisk him away from a political event where he had been protesting, was reasonable. 121 S.Ct. at 2154, 2159. In addition, prior to the alleged shove, the military officer had, it was alleged, rushed the § 1983 plaintiff away from the area in which the speaker (Vice President Gore) was speaking, "half-walking, half-dragging him, with his feet 'barely touching the ground.'" *Id.* at 2154. Conceding that reasonable minds might disagree on whether the force used was excessive under the circumstances, the Supreme Court nonetheless concluded that under that set of facts, the law was not settled as to whether it was excessive, and, therefore, that a reasonable officer, acting in the heat of the moment, might have found it reasonable to act as he did. *Id.* at 2159–60.

It is important to note that the Court considered the factual nuances in reaching its conclusion:

[The officer] did not know the full extent of the threat [the detainee] posed or how many other persons there might be who, in concert with [him], posed a threat to the security of the Vice President. There were other potential protestors in the crowd, and at least one other individual was arrested and placed into the van with [him]. In carrying out the detention, as it has been assumed the officers had the right to do, [the officer] was required to recognize the necessity to protect the Vice President by securing [the detainee] and restoring order to the scene. It cannot be said there was a clearly established rule that would prohibit using the force [the officer] did to

place [the detainee] into the van to accomplish these objectives.

121 S.Ct. at 2160.

Although *Saucier* is consistent with its prior rulings, such as *Anderson* and *Hunter*, what is perhaps confusing about the logic employed therein is that the Court expressly stated that the paradigm of reasonableness that the Court is to use in its qualified immunity analysis, the Fourth Amendment, is the same as that to be used by the jury. 121 S.Ct. at 2160. In effect, what the Court has announced is that, before sending a Fourth Amendment question of disputed fact to the jury in a § 1983 case, it must pre-evaluate the reasonableness question by paying close attention to all of the facts, and even the potential subjective considerations that could have been going through the mind of the defendant officer at the time, and decide whether there is any doubt as to the question of reasonableness. If the plaintiff does not submit, and/or the court cannot find, authority putting beyond doubt the question of whether a reasonable officer should have known that he was violating the § 1983 plaintiff's rights by using excessive force, such that it is *clearly settled*, the Court must allow qualified immunity to attach. This doctrine has the effect of taking some jury questions away from the jury, but that is precisely why qualified immunity is a principle of *law*, not fact.

An important distinction between *Saucier* and an earlier Sixth Circuit case, *Brandenburg v. Cureton*, 882 F.2d 211 (6th Cir.1989), should be noted. In *Brandenburg*, the Sixth Circuit held that where a genuine issue of fact exists with respect to the conduct of the § 1983 defendant, such that it is impossible to determine without making findings of fact whether the defendant violated a clearly established right, qualified immunity cannot attach on summary judgment. 882 F.2d at 215–16.

*Saucier* and *Brandenburg* are not inconsistent. *Saucier* stands for the proposition that, even assuming that the plaintiff's version of the facts is correct, if it *cannot* be firmly concluded, after conducting a detailed evaluation of the defendant's conduct in light of those facts, such as Justice Kennedy did in writing for the Court in *Saucier*, that the law is clearly established as to what is reasonable under those specific circumstances, such that the officer should have known that the § 1983 plaintiff had a clearly established right not to be subjected to that conduct, then qualified immunity must attach; the case should not go to the jury. By contrast, the case should go to the jury, and *Brandenburg* should apply, where the Court *can* firmly conclude, again assuming that the plaintiff's version of the facts is true, that the law is clearly established under those facts, such that the officer should have known that the § 1983 plaintiff had a clearly established right not to be subjected to that conduct. It is then up to the jury to determine just what that conduct was in the final analysis.

For example, assume that plaintiff P alleges that defendant D hit him over the head with his heavy-duty flashlight during an arrest for shoplifting, despite the fact that P had put up no resistance. If D denies the allegations and moves for summary judgment on the basis of qualified immunity, the motion would have to be overruled. Not only would there be a genuine issue of material fact on exactly what occurred, but the court would also have no problem finding ample authority holding that, if P's version of the facts proved to be true, D's conduct was unreasonable and that D should have appreciated the fact that it was unreasonable at the time he was hitting P. In other words, on those facts, the law, as well as P's rights thereunder, is clearly established. In such a case, *Brandenburg* controls, and *Saucier* is inapplicable.

■ As for evaluating the contours of the constitutional right in question, the Court looks first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the circuit, and finally to decisions of other circuits. *See Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2001). The question in evaluating whether an officer used excessive force is whether, under the totality of the circumstances, he or she was justified in effecting a particular sort of seizure, without regard to that officer's underlying intent or motivation. *See Bass v. Robinson,* 167 F.3d 1041, 1046 (6th Cir.1999)(citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865). "A person's right to be free against excessive force during the course of an arrest is a clearly established right," *id.* at 1051, but that is not the ultimate question. The ultimate, more particularized question in the qualified immunity context is whether Jones' had a clearly established right *under the facts as he states them.*

■ This case falls into the realm of *Brandenburg.* Assuming the truth of Jones' deposition testimony, the question, for purposes of the qualified immunity analysis, is whether it would be reasonable for police officers to come upon a situation to which they've been called, find an individual who has already been subdued by unarmed security detail, and, without saying a single word to him or asking any questions, pin him against a car, then whirl him around, lift him up into a bear hug, throw him to the ground, and then sit, two at a time, on top of him, while a member of the security detail holds his neck in a choke hold. Add to this hypothetical, the facts that there is no emergency situation, the subdued individual is not armed and has put up no forceful resistance, and there is no reason to think that he poses a substantial risk to the officers or the public, or that any accomplice is likely to come upon the scene and attack the officers, and

the answer to the question is plain: such conduct would not be reasonable. More importantly, the law in this factual context is clearly established, and no reasonable officer could honestly doubt that such actions would violate the clearly established right of the individual to be free from such.

In short, the concerns expressed by Justice Kennedy in his opinion for the *Saucier* Court, such as the security of the Vice President of the United States and the inability of the defendant officer to have known at the time whether the § 1983 plaintiff was acting by himself or in concert with others, were not the concerns of the KPD officers named herein. The Kettering Defendants argue that their conduct was reasonable under the circumstances, at least reasonable enough such that they could not have known that they were being unreasonable. Their argument is not persuasive for two reasons. *First,* merely citing to *Saucier,* indeed, the mere existence of *Saucier* in the corpus of qualified immunity case law, is not itself a reason for the Court to recognize the applicability of the qualified immunity doctrine in a given case. *Saucier* does not hold that police will always be immune from § 1983 liability. Had the Supreme Court intended that to be the case, it certainly would have said so. Thus, at some point, even the *Saucier* Court would have to recognize that police can be held liable under § 1983.

■ Finding where that point lies raises the *second* important reason why the Court does not find the Kettering Defendants' argument persuasive. As parties moving for summary judgment are wont to do, the Kettering Defendants couch their argument within a factual context that includes facts which Jones disputes. The Kettering Defendants state that "the officers' use of force was limited to only that needed to overcome the plaintiff's resistence [sic] to his being handcuffed pursuant to a lawful arrest." (Doc. # 16 at 17.)

Yet, the very premise of this argument is one which the Court may not accept when ruling on summary judgment because Jones heartily disputes that he put up any resistance. The Kettering Defendants also state that the officers acted reasonably in light of the fact that Jones "refused to answer any questions" and "took a step to leave." (*Id.*) Again, Jones disputes these facts, and again, the Court may not consider them at this stage. *They may be true, and Jones may be fudging the truth,* but that is for the trier of fact to decide. At the summary judgment stage, the Court must construe the facts and all reasonable inferences in favor of the non-moving party, who in this case is Jones. The Court is aware that Jones was, in fact, convicted of resisting arrest, an issue which will be addressed in more detail below, but the Court's attention has not been directed to any findings of fact made by the Municipal Judge who convicted Jones, and therefore cannot take notice of such.

The Court need not cite herein to all of the cases in which it has been found by a jury or held by a court that the forceful shoving and striking of an individual who has put up no resistance, and who has been detained in an otherwise non-threatening environment, is unreasonable. Suffice it to say that the body of law is considerable, and leaves no doubt in the mind of this Court that if Jones' version of the facts is to be believed, he had a clearly established right not to be treated in such a way.

Accordingly, the Kettering Defendants' Motion for Summary Judgment on the issue of qualified immunity is OVERRULED.

### F. *Officers Wabler and Marcum—Res Judicata*

■ The Kettering Defendants argue, in the alternative, that Officers Wa-

bler and Marcum cannot be held liable for use of excessive force on the basis of the principle of *res judicata.* In short, they point to Jones' conviction in the Municipal Court of Kettering, Ohio, for resisting arrest, and the fact that such a conviction can only lie where it has been proven by the prosecution that the arrest attempted was lawful. *See White v. Ebie,* 1999 WL 775914, at *1, 191 F.3d 454 (6th Cir.1999)(citing *Ohio v. Hendren,* 110 Ohio App.3d 496, 674 N.E.2d 774, 776 (1996)). *A fortiori,* they argue, the issue of excessive force is settled between these parties, as the Municipal Judge could not have found Jones' arrest lawful had he not first ruled out the possibility that the officers had used excessive force.[7] *See id.* (citing *Hendren, supra* ).

The Kettering Defendants then direct the Court's attention to *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), also analyzed by the Sixth Circuit in *White,* to establish the proposition that in order to recover damages in a § 1983 action for harm "caused by actions whose unlawfulness would render a conviction ... invalid, a § 1983 plaintiff must prove that the conviction ... has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus...." In this case, there is no indication that Jones' conviction has not remained intact. Addressing seemingly identical facts in *White,* the Sixth Circuit found that *Heck* was dispositive, and that to proceed to allow the jury to determine whether the § 1983 defendant used excessive force after the plaintiff had already been duly convicted of resisting arrest would be improper. 1999 WL 775914, at *1, 191 F.3d 454.

Jones presents contrary authority. He cites to *Nelson v. Jashurek,* 109 F.3d 142 (3rd Cir.1997), in which it was held that the Supreme Court's holding in *Heck* did not bar a § 1983 plaintiff who had previously been convicted of resisting arrest in a Pennsylvania court from proceeding with his action for excessive force. This Court finds the holding in *Nelson* questionable, but, in any event, also distinguishable. In that case, the § 1983 plaintiff had been convicted by a jury in state court before bringing his suit in federal court. On the basis of *Heck,* the district court granted the police officer defendant summary judgment, and the Third Circuit reversed. In the appellate court's opinion, the distinction between its case and *Heck* turned on the jury instructions given in the state criminal proceeding. In the state proceed-

7. The Court believes that the doctrine of collateral estoppel, or issue preclusion, is the more apt term for the doctrine at issue herein, as compared to *res judicata,* or claim preclusion. *Res judicata* is appropriately invoked where an entire claim has already been litigated, or could have been litigated, in a prior action, whereas collateral estoppel is appropriately invoked where a particular issue has previously been fully litigated. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77, n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56, (1984). Herein, the Kettering Defendants are not arguing that Jones should have, or even could have, litigated his § 1983 claim in the Kettering Municipal Court. They are merely arguing that the particular issue of use of force was litigated.

The application of collateral estoppel rests upon a showing of four elements: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *See Smith v. Securities and Exchange Comm'n,* 129 F.3d 356, 362 (6th Cir.1997).

ing, the state judge had instructed the jury that if the criminal defendant's actions "did not justify substantial force" by the officer, "you must find [the defendant] not guilty." 109 F.3d at 145. Obviously, by finding the criminal defendant guilty, the jury found that the officer was justified in using "substantial force." The Third Circuit opined that although this was true, it could still be found in the civil context that the "substantial force" used was "excessive," and therefore unlawful as a matter of constitutional law, although still lawful as a matter of criminal law. *See id.* at 145–46. In other words, given the phrasing of the jury instructions, the verdict in the criminal case did not foreclose the possibility that the force used against the criminal defendant, subsequently the § 1983 plaintiff, was excessive.

Whatever the merit of *Nelson,* herein, it was not a jury, but rather a judge, who found Plaintiff Jones guilty. Thus, the Court need not ponder the nuances of any jury instructions, for the Municipal Judge, fully knowledgeable of the elements of resisting arrest in Ohio, could not have found Jones guilty had he or she not considered the gravity of the force used by Officers Wabler and Marcum *at the time they attempted to effect the arrest which the judge found Jones guilty of resisting.*

This stressed point is important for the reasons discussed in *Martinez v. City of Albuquerque,* 184 F.3d 1123 (10th Cir. 1999), also cited by Jones.[8] In that case, although the Tenth Circuit relied upon the opinion in *Nelson* for the proposition that a successful § 1983 action for use of exces-sive force would not necessarily undermine a state conviction for resisting arrest, its actual holding turns on the facts of the case, and is thus persuasive herein for reasons unrelated to *Nelson.* In *Martinez,* the court considered the temporal aspects of the § 1983 plaintiff's entire detention, and held that it would not be inconsistent to find that police officers at one point in the chain of events tried to effect a lawful arrest which was unlawfully resisted, but thereafter used excessive and unlawful force to subdue him. 184 F.3d at 1127. As such, the Court held that the issue of excessive force was not necessarily decided, for collateral estoppel purposes, because the state judge would not have necessarily been required to consider the amount of force used throughout the duration of the entire incident.[9] *Id.,* at 1127 n. 2.

■ While at first glance the case at bar seems to be on all fours with *White,* upon reflection, it is seems possible to the Court that Jones' conviction for resisting arrest does not foreclose the possibility of finding that Officers Wabler and Marcum used excessive force at some point. It is possible that the Municipal Judge might have only concentrated on those facts surrounding the lawfully attempted arrest, and not paid attention to any antecedent or subsequent facts. Such a scenario is unlikely, to be sure, but the Court cannot know. As an additional matter, the fact that Jones pled "no contest" in his criminal appearance raises the question of whether the issue was even fully litigated. The

---

**8.** Jones cites one other case, *Smithart v. Towery,* 79 F.3d 951 (9th Cir.1996). The Court finds that case inapposite, and it need not be discussed.

**9.** For example, a defendant might resist a lawful arrest, to which the arresting officers might respond with excessive force to subdue him. The subsequent use of excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it. Though occurring in one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer.

Court does not know what facts the *White* court had at its disposal in ruling as it did in its case, as the unpublished opinion is slightly more than one page in length, and gives but a cursory review of the underlying facts, but when the facts herein are viewed in a light most favorable to Jones, the non-moving party, it is conceivable to the Court that a jury may find that the officers acted unreasonably at some point in their altercation with Jones, without calling into question the integrity of Jones' conviction for resisting arrest, a conviction which may have been rendered without consideration of all of the evidence adduced herein.[10]

Finally, the persuasive value of *White* is extremely curtailed by other post-*Heck* Sixth Circuit opinions which have reached the contrary conclusion on the identical issue. *See Donovan v. Thames*, 105 F.3d 291, 295–97 (6th Cir.1997)(holding that a resisting arrest conviction under Kentucky law did not necessarily foreclose a § 1983 action for excessive force); *Sigley v. Kuhn*, 2000 WL 145187, 205 F.3d 1341 (6th Cir.2000)(holding that a resisting arrest conviction under Ohio law did not necessarily foreclose a § 1983 action for excessive force, *and noting in particular the fact that the § 1983 plaintiff had pled "no contest" in the state court and therefore had not actually litigated the issue of use of force* ).

Having found that the gravity of the officers' use of force during all relevant times has not necessarily been decided between these parties, revisiting the issue herein would not necessarily invite a collateral attack on findings of fact integral to Jones' criminal conviction. Accordingly, on this issue, the Kettering Defendants' Motion for Summary Judgment is OVERRULED.

IV. *Motion for Partial Summary Judgment of Defendants McNally and Hawkins* (Doc. # 17)

McNally and Hawkins move for summary judgment on the § 1983 claim against them, contending that they were not acting under color of law at the time of the events in question. Jones expressly concedes this in his Memorandum in Opposition (Doc. # 23 at 1), and raises no opposition to it. Accordingly, this Motion for Summary Judgment is SUSTAINED.[11]

V. *Motion for Summary Judgment of Defendant Joseph Peters* (Doc. # 18)

Peters moves for summary judgment on the § 1983 claim against him on the same basis as that put forth by McNally and Hawkins. Again, Jones expressly concedes this argument in his Memorandum in Opposition (Doc. # 24 at 2), raising no opposition to it. Thus, as to the § 1983 claim, Peters' Motion for Summary Judgment is SUSTAINED.[12]

Peters also moves for summary judgment on the assault and battery claim

---

10. For example, given Jones' deposition testimony, which the Court must accept as true for purposes of ruling on summary judgment, that he was pinned against the limousine without any prior verbal contact from the officers, that his face pressed against the car, that he was then given a bear hug and thrown to the ground, and that two officers and a security employee kept him pinned and in a choke hold, the Court believes that even if a jury would find this conduct unreasonable, which it surely would, it would not call into question Jones' resisting arrest conviction if that conviction were based on resistance to an arrest properly administered at a distinct moment either before or after the conduct just described.

11. As noted at the beginning of this Decision and Entry, the § 1983 cause of action does not appear to have been pled against Hawkins in any event.

12. Again, this Motion seems superfluous, as the § 1983 claim was not pled against Peters.

against him, arguing that he was not present at the scene of the alleged assault and battery. Relying on the Kettering Police Department Report ("Police Report"), Jones argues that a genuine issue of fact exists on the question of Peters' involvement in the alleged assault and battery. In his Reply (Doc. # 28), Peters moves to strike the police report from the record on the ground that Jones is using it to get inadmissible hearsay statements before the Court.

█ Where a party attempts to make its case on the basis of hearsay, the Court's obligation is not to strike the document upon which that party relies; it is merely to disregard the document to the extent it is being used to admit facts obtained from hearsay statements.[13] To the extent Peters' Reply serves also as a Motion to Strike, it is OVERRULED.

As for the statements contained in the Police Report, and relied upon herein by Jones, the Court agrees with Peters that it cannot be considered for the purpose of establishing the fact which Jones seeks to establish. The Police Report was prepared by Officer Marcum. (*See* Police Report, attached to Jones' Memorandum in Opposition (Doc. # 24).) Jones seeks to have the following statements from the Police Report considered:

1) "McNally, Peters, and Hawkins, wrestled the defendant to the ground and called K.D.P.";

2) "The three of us [Kettering Police Officers] proceeded to the rear of the Fraze and found several Concert Security Personal [sic] surrounding the defendant"; and

3) "Abrasion to forehead came before our encounter" (noted in the Use of Force addendum to the Police Report).

█ None of the three statements is admissible. Regarding the first statement, Officer Marcum was not present to witness the events which are referred to therein. (Marcum Depo. at 11–12.) Only facts which would be admissible at trial may be considered by the Court for purposes of determining whether a genuine issue of material fact exists which precludes the award of summary judgment. *See* Fed.R.Civ.P. 56(e). Fed.R.Evid. 803(8) provides that factual findings made by police officers with authority to investigate as much are excepted from the hearsay rule unless the sources of the information or other circumstances indicate a lack of trustworthiness. Not only did Officer Marcum not observe Peters at the scene of the alleged assault and battery, but he obtained his information from Officer Wabler (Marcum Depo. at 17–18), who, for his part, obtained the information from Fraze Pavilion employees. (*Id.* at 18.) These facts, along with the fact that numerous depositions have been filed and Jones has not pointed to any testimony of anyone involved in the event who has placed Peters at the scene, leads the Court to find that Officer Marcum's statement that Peters participated in wrestling Jones to the ground is hearsay which lacks a sufficiently reliable basis for being considered as coming within the hearsay exception.

As for statements two and three, they indicate nothing so far as Peters is concerned.

Jones also relies on the witness statement of McNally, attached to the Police Report, in which McNally stated: "Myself

13. Fed.R.Civ.P. 12(f) allows a court to strike certain matter contained within the "pleadings." Thus, as a linguistic matter, a motion to strike matter from another motion is probably not well taken. In any event, Fed. R.Civ.P. 56(e) provides that a court may only consider facts as would be admissible at trial. Because hearsay is not admissible at trial, the remedy is simply for the court not to consider it.

and two other guards wrestled [Jones] to the ground and called for KPD [assistance]." As with statements two and three, this statement raises no inference of Peters' involvement. One of the "two other" guards may have been Peters, but it may also have been any number of people. A non-moving party cannot survive summary judgment on the basis of speculation.

Accordingly, as to Jones' claim of assault and battery, Peters' Motion for Summary Judgment is SUSTAINED.

## VI. *Conclusion*

For the reasons and citations to authority given, the Court rules as follows on Defendants' respective Motions: the Motion for Summary Judgment of the Kettering Defendants (Doc. # 16) is SUSTAINED as to the liability of Officer Bodner, the liability of the City of Kettering Police Department, and the liability of the City of Kettering. As it relates to Officers Wabler and Marcum, said Motion is OVERRULED *in toto*.

The Motion for Partial Summary Judgment of McNally and Hawkins (Doc. # 17) is SUSTAINED.

The Motion to Strike of Peters (Doc. # 18) is OVERRULED. The Motion for Summary Judgment of Peters (Doc. # 18) is SUSTAINED.

In light of the rulings contained herein, the Court notes that Jones' § 1983 cause of action (Second Claim for Relief) remains viable as to Officers Wabler and Marcum, and his assault and battery cause of action (First Claim for Relief) remains viable as to McNally, Hawkins, Officer Wabler, Officer Marcum, and the Fraze Pavilion (to the extent the Fraze Pavilion is *sui juris*, an issue not addressed by the Kettering Defendants herein).