**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KRISTY BEETS; GLENN ALLEN ROSE,
as successors in interest to Glenn
Patrick Rose and as individuals,
        *Plaintiffs-Appellants,*

        v.

COUNTY OF LOS ANGELES, a
political subdivision of the State
of California; STEVEN WINTER, an
individual,
        *Defendants-Appellees.*

No. 10-55036

D.C. No.
2:09-cv-00555-R-SS

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
October 13, 2011—Pasadena, California

Filed February 10, 2012

Before: Ferdinand F. Fernandez and Consuelo M. Callahan,
Circuit Judges, and Ralph R. Erickson,
Chief District Judge.*

Opinion by Judge Callahan

---

*The Honorable Ralph R. Erickson, Chief District Judge for the U.S.
District Court for North Dakota, sitting by designation.

1537

**COUNSEL**

Dale K. Galipo of Woodland Hills, California, for the plaintiffs-appellants.

David D. Lawrence and Jin S. Choi, Lawrence, Beach, Allen & Choi, PC, of Glendale, California, for the defendants-appellees.

---

**OPINION**

CALLAHAN, Circuit Judge:

Kristy Beets and Glenn Allen Rose ("plaintiffs"), the parents of Glenn Patrick Rose (sometimes referred to as "GPR") filed an action pursuant to 42 U.S.C. § 1983 alleging that Deputy Winter used excessive force when he shot and killed GPR. The district court dismissed the action on the basis that pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), the conviction of GPR's companion, Ms. Morales, on several counts including aiding and abetting in the assault on a peace officer with a deadly weapon barred plaintiffs from attempting to show that Deputy Winter used excessive force.

We hold that *Heck* bars plaintiffs' suit. Plaintiffs seek to show that Deputy Winter used excessive force, but the jury that convicted GPR's accomplice has already determined that the deputy acted within the scope of his employment and did not use excessive force. Accordingly, a verdict in plaintiffs' favor would tend to undermine Morales' conviction. Moreover, Morales, GPR's accomplice, challenged the propriety of Deputy Winter's actions in her criminal trial, her interests in doing so were in no way inconsistent with plaintiffs' interests, and Morales was convicted by a jury. Under these circumstances, plaintiffs' § 1983 action is barred by *Heck*.

**I**

On May 13, 2008, Glenn Patrick Rose and his companion, Ms. Morales, fled from Los Angeles Sheriffs and California Highway Patrol (CHP) Officers in a stolen white Honda. GPR

turned into an alley, parked, and GPR and Morales ran to a nearby maroon pickup truck and entered the truck. Deputy Sheriff Winter and three other officers attempted to arrest GPR and Morales as they entered the pickup truck. However, they fought back and were able to enter the truck, start the engine, and drive it out of the parking space.

GPR drove the truck forward, colliding with a CHP patrol car, possibly injuring the officers located on the other side of the car. He then reversed direction and backed rapidly in the direction of Deputy Winter. Deputy Winter, fearing for his life, fired at GPR and killed him. There is evidence in the record that at least two other officers also fired at GPR and Morales. The record further indicates that the truck ceased moving shortly after GPR was shot by Deputy Winter.

Morales was arrested. She was charged in an eight count indictment alleging the unlawful driving or taking of a vehicle, evading an officer, and three counts of assault upon a peace officer. Count two alleged that Morales:

> did willfully and unlawfully commit an assault with a deadly weapon and instrument and by force likely to produce great bodily injury upon the person of S. WINTER when [Morales] knew or should have known that said person was a peace officer then and there engaged in the performance of his/her duties.

Morales was convicted on at least five of the counts, including the three counts of assault with a deadly weapon.

Morales appealed her convictions to the California Appellate Court, 2nd Appellate District. In her brief, she argued that she "was charged and convicted of, among other things, three counts of assault with a deadly weapon (*i.e.*, the vehicle) on a peace officer" but that she did not have "the mens rea necessary to commit the assaults, or aid and abet the assaults, or aid and abet a crime that naturally and probably would result in

the assaults." The California Court of Appeal affirmed Morales' conviction, and the California Supreme Court denied her petition for review.

Kristy Beets and Glenn Allen Rose filed their civil action in the United States District Court for the Central District of California. They brought their action in their own rights and as successors in interest to GPR, their son. They alleged that Deputy Winter used excessive deadly force against GPR in violation of his and their civil and constitutional rights.

Deputy Winter and the other defendants (appellees) moved for judgment on the pleading pursuant to Fed. R. Civ. P. 12(c) on the ground that the action was barred by *Heck*. The District Court held a hearing on the motion and explained:

> The relevant question is whether success in the Section 1983 suit would necessarily imply or demonstrate the invalidity of the earlier conviction or sentence.

> In this case, if plaintiffs prevailed on their claims, such a result would be fundamentally inconsistent with Ms. Morales' criminal conviction. It would necessarily imply the invalidity of her conviction and the invalidity of the jury's determination on which her conviction is based.

> Morales' conviction for felony resisting arrest and assault with a deadly weapon on a peace officer were under an aiding and abetting theory. As such, the jury had to have found that Rose committed those crimes.

> The jury was specifically instructed that it could not find that Rose committed the crimes unless it determined that Officer Winter was in the lawful performance of his duties and did not use excessive

force. As such, Morales' conviction necessarily rested on the jury's findings as to the actions of Deputy Winter with respect to Rose. That is, the jury found that Deputy Winter was in the lawful performance of his duties and did not use excessive force.

The court dismissed the action, holding:

Plaintiffs' causes of action under 42 U.S.C. § 1983 are barred by the criminal conviction of Sarah Rebecca Morales in that success on the federal claim by Plaintiffs in the instant action would necessarily imply the invalidity of the criminal conviction of Ms. Morales. *Heck v. Humphrey*, 512 U.S. 477 (1994); *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005).

On January 7, 2010, plaintiffs filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.[1]

## II

We review a grant of a motion to dismiss de novo. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1053-54 (9th Cir. 2008); *Stanley v. Trs. of the Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006). Here, whether plaintiffs' civil action is barred by *Heck* is a question of law, which is subject to de novo review. Furthermore, it controls plaintiffs' right to amend their complaint. If their claims are barred by *Heck*, filing an amended complaint would be a futile act. If their claims are not barred, they are entitled to file an amended complaint, if an amendment is deemed necessary or advisable.

---

[1]The District Court declined to exercise jurisdiction over appellants' remaining state law claims and dismissed them without prejudice.

# III

Plaintiffs raise two issues on appeal. First, they argue that *Heck* should be strictly interpreted and may not be applied to § 1983 actions where the plaintiffs have not been convicted or charged with any crimes. Second, they argue even if *Heck* were applicable, it would not bar their civil action. They argue that they should be allowed to show that Deputy Winter had managed to move to one side of the truck when he shot GPR through a side window, and accordingly Deputy Winter was no longer in danger when he shot, and the shooting occurred subsequent to GPR's criminal activity. We address their arguments in reverse order because our conclusion that *Heck* would otherwise bar this action focuses our consideration of whether the preclusion extends to these plaintiffs who were not criminally prosecuted or convicted.

### A.  The underlying facts are within the coverage of *Heck*.

#### 1.  *The* Heck *preclusion doctrine*

**[1]** What has come to be known as the "*Heck* preclusion doctrine" or the "*Heck* bar" is based on the following paragraph in the Supreme Court's opinion:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated

is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486-87 (footnotes omitted).

In *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005)(en banc), we recognized that " 'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.' *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir.1996)." Consequently, "the relevant question is whether success in a subsequent § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence . . . ." *Id.* quoting *Heck*, 512 U.S. at 487.

**[2]** In addressing this question in *City of Hemet*, we recognized that an allegation of excessive force by a police officer would not be barred by *Heck* if it were distinct temporally or spatially from the factual basis for the person's conviction. 394 F.3d at 699. We noted that "Smith would be allowed to bring a § 1983 action, however, if the use of excessive force occurred *subsequent* to the conduct on which his conviction was based." *Id.* at 698. The critical element remains whether the plaintiff's action, if successful, will "demonstrate the invalidity of any outstanding criminal judgment." *Heck*, 512 U.S. at 486-87.

2.  *Deputy Winter's actions cannot be separated from GPR's and Morales' criminal activity*

On appeal, plaintiffs seek to assert that "Deputy Winter fired at the decedent when the truck was not moving in the direction of Deputy Winter or any other officer and at a time when the decedent was not resisting by force and when no assault on any officer was taking place." This assertion was not advanced in the district court, is not supported by any evidence in the record, and its legal assertions are incorrect.

It does not appear that plaintiffs' attempt to separate Deputy Winter's action from GPR's criminal activity was presented to the district court. There is no mention of this argument in plaintiffs' opposition to the defendants' motion to dismiss. At the hearing on the motion, plaintiffs' counsel referred to Deputy Winter's deposition and intimated that the felony resisting of arrest happened prior to the shooting. The deposition does state that GPR and Morales struck out at police officers when the police tried to stop them from getting into the pickup truck. However, Morales' conviction for aiding and abetting an assault on a police officer with a deadly weapon concerned the subsequent use of the pickup truck. Deputy Winter stated that the truck was "racing back" at him, that he "had fractions of a second to do something," and that he "shot because I felt I was about to get run over and my life was in danger." Plaintiffs offered nothing in response to Deputy Winter's statement. Their failure to argue in the district court that factually GPR was not resisting by force or assaulting a police officer precludes them from advancing this contention on appeal.[2] *See Tides v. The Boeing Co.*, 644 F.3d 809,

---

[2]Plaintiffs implicitly admit that they failed to make this factual argument in the district court when they justify their statement of facts in their opening brief as including "those additional facts which Appellants believe would cure any basis for *Heck* preclusion were Appellants granted leave to amend." Counsel cannot resurrect a case by alleging, for the first time on appeal, unsupported facts that are contrary to the evidence in the record.

814 n.6 (9th Cir. 2011), *cert. denied* 132 S. Ct. 518 (2011) (holding that absent special circumstances we do not review issues not raised in the district court); *Campbell v. Burt*, 141 F.3d 927, 931 (9th Cir. 1998) ("appeals court will not review an issue not raised below unless necessary to prevent manifest injustice"); *Int'l. Union of Bricklayers & Allied Craftsman Local Union v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985) (same).

**[3]** Furthermore, plaintiffs' attempt to separate Deputy Winter's action from GPR's criminal activity is not reasonable. It is uncontroverted that GPR and Morales fled from the authorities, physically resisted arrest when getting into the pickup truck, rammed one police car with the pickup truck, and then accelerated backward toward Deputy Winter. This is overwhelming evidence that they were resisting arrest by force and assaulting police officers. There may be some question as to whether, after Deputy Winter fired, the truck continued to move backward or moved forward toward the police car. There is also testimony that other officers fired at GPR. However, all agree that it was the shooting that brought an end to GPR's and Morales' criminal activity.

In *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2002), we rejected similar attempts to separate the officers' responses from the criminal defendants' activities. Cunningham and Soly were surrounded by police after they committed an armed robbery. *Id.* at 1152. Cunningham was injured and Soly killed in the ensuing fire fight. *Id.* Cunningham was convicted in state court "of three counts of attempting to murder [police] officers by firing a weapon at them; Soly's murder by provoking the officers into shooting at the getaway car; robbery; and burglary." *Id.* Cunningham and Soly's parents filed § 1983 actions alleging that the police used excessive force.

In an attempt to overcome the *Heck* barrier to his action, Cunningham asserted a "danger creation theory:" the officers used excessive force to deliberately create a situation that pro-

voked him into firing. *Id.* at 1154. We rejected this argument explaining:

> In convicting him of felony murder, the jury necessarily found that, pursuant to the jury instructions, Cunningham's firing at the police occurred during the commission of a robbery. The SIS officers' jamming of the getaway car falls within the temporal scope of Cunningham's crime and is part of a single act for which the jury found that Cunningham bears responsibility. Under the jury instructions that were given, the jury could not have convicted Cunningham for attempted murder unless the jury concluded that at the moment Cunningham fired on the SIS officers, he knew or should have known that they were police officers acting within the scope of their duties. This circumstance makes it impossible for Cunningham to prove, as he must to prevail on his § 1983 claim, that the police used excessive force when they jammed the getaway car because it would necessarily imply they were not acting within the scope of their duties.

312 F.3d at 1154-55.

Cunningham also attempted to argue that even if the police did not create a dangerous situation, he should be allowed to proceed under the theory that the police used excessive force by responding with shotgun blasts and pistol shots. *Id.* at 1155. The panel distinguished *Smithart*, 79 F.3d 951, on the grounds that although Smithart "tried to use his truck to run over the sheriff and state patrolman," the alleged excessive force by the police arose after Smithart got out of the truck and was "without access to his 'assault weapon.' " *Cunningham*, 312 F.3d at 1155. We concluded that:

> there was no break between Cunningham's provocative act of firing on the police and the police

response that he claims was excessive. Indeed, in convicting Cunningham of felony murder, the jury concluded that the police response was a natural consequence of Cunningham's provocative act. Because the two are so closely interrelated, Cunningham's conviction forecloses his excessive force claim against the SIS officers.

*Id*.

**[4]** Our reasoning in *Cunningham* is persuasive here. There was no break between GPR's assault with the pickup truck and the police response. Deputy Winter acted during the course of GPR's and Morales' criminal activity and brought that activity to an end. Deputy Winter's actions were "within the temporal scope of [GPR's and Morales'] crime and [were] part of a single act for which the jury found that [Morales] bears responsibility." *See id*. at 1154. There was no separation between GPR's criminal actions and the alleged use of excessive force such as existed in *Smithart* (alleged assault occurred after Smithart got out of the truck) or *City of Hemet* (alleged assault occurred after Smith was detained). Thus, even were it determined that the maroon pickup truck had come to a stop a fraction of a second before Deputy Winter fired, the shots would remain part of the temporal scope of GPR's and Morales' crimes.

   3.  *Morales' conviction determined that Deputy Winter acted within the scope of his employment and did not use excessive force*

**[5]** The jury that convicted Morales determined that Deputy Winter acted within the scope of his employment and did not use excessive force. The instructions given on the charge that Morales assaulted a peace officer with a deadly weapon required that to convict Morales, the jury had to find that she acted willfully against a police officer who was "lawfully performing his duties as a peace officer," and that the officer was

not "using unreasonable or excessive force in his or her duties." Accordingly, the jury's conviction of Morales rejected any contention that Deputy Winter used excessive force, and thus any recovery by the plaintiffs in this civil action would be contrary to the jury's determination.

**[6]** Plaintiffs attempt to avoid this conclusion by arguing that there are several possible factual bases for Morales' conviction and that therefore Morales' conviction is not necessarily based on the same factual basis as the alleged civil rights violations, citing *Sanford v. Motts,* 258 F.3d 1117, 1118-19 (9th Cir. 2001). This argument fails on two counts. First, there are not multiple factual bases for Morales' conviction for aiding and abetting in the assault on a police officer with a deadly weapon. As Morales represented in her briefs to the California Court of Appeal, her conviction for assault on a police officer with a deadly weapon was based on her aiding and abetting GPR in the operation of the truck. Second, *Sanford* is inapplicable in light of our subsequent en banc opinion in *City of Hemet*. In *Sanford*, the defendant pled *nolo contendere* and we determined that "[n]othing in the record informs us what the factual basis was for Sanford's plea of nolo." *Id.* at 1119. Here, Morales was convicted by a jury. In *City of Hemet*, we stated:

> Where a defendant is charged with a single-act offense but there are multiple acts involved each of which could serve as the basis for a conviction, a jury does not determine which specific act or acts form the basis for the conviction. . . . . Thus, **a jury's verdict necessarily determines the lawfulness of the officers' actions throughout the whole course of the defendant's conduct, and any action alleging the use of excessive force would "necessarily imply the invalidity of his conviction."** *Susag* [*v. City of Lake Forest*], 94 Cal. App. 4th [1401] at 1410, [(2002)].

394 F.3d at 699 n.5 (emphasis added). In sum, the record shows that the jury that convicted Morales determined that Deputy Winter acted within the scope of his duties and did not use excessive force, and that plaintiffs seek to show that the very same act constituted excessive force. Thus, if GPR rather than Morales had been convicted, there is no doubt that this civil action would have to be dismissed pursuant to *Heck*. Similarly, it is clear that Morales' conviction bars her from bringing a § 1983 action based on Deputy Winter's action.

**B.   Plaintiffs' Action in this case is barred by *Heck v. Humphrey*.**

**[7]** The remaining question is whether the *Heck* bar extends to the plaintiffs in this case who were not tried or convicted. In *City of Hemet*, we reiterated our statement in *Smithart* that pursuant to *Heck*, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *City of Hemet*, 394 F.3d at 695 (quoting *Smithart*, 79 F.3d at 952). As the Supreme Court explained, the relevant question is whether success in a subsequent § 1983 suit would "necessarily imply" or "demonstrate" the invalidity of the earlier conviction or sentence under § 148(a)(1). *Heck*, 512 U.S. at 487. Our description of the *Heck* preclusion doctrine in *City of Hemet* references "a criminal conviction," not "the plaintiff's" criminal conviction. *See City of Hemet*, 394 F.3d at 695. Our choice of language suggests that the *Heck* preclusion doctrine may apply to civil actions brought by individuals other than the convicted criminal if such application does not otherwise violate any constitutional principles.

**[8]** Here, Morales' conviction "stands" and arises out of the same facts as are in issue in plaintiffs' § 1983 action. As noted, Morales could not have been convicted of aiding and abetting an assault on a police officer if the jury had determined that Deputy Winter used excessive force. Plaintiffs,

however, can only recover if they prove that Deputy Winter did use excessive force.

**[9]** Accordingly, this case presents a situation where to recover in their § 1983 action, plaintiffs must prove facts that are "fundamentally inconsistent" with Morales' conviction. This is clearly contrary to a number of the reasons behind the *Heck* preclusion doctrine.[3] Furthermore, there is nothing inherent in the *Heck* preclusion doctrine as set forth in *City of Hemet* that precludes its application to this case. It follows that if the *Heck* preclusion doctrine does not bar plaintiffs' action, the exception must be based on some consideration beyond the preclusion doctrine itself.

---

[3]The Supreme Court in explaining its ruling in *Heck* considered malicious prosecution actions and stated:

> One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused. Prosser and Keeton, *supra*, at 874; *Carpenter v. Nutter*, 127 Cal. 61, 59 P. 301 (1899). This requirement "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991). Furthermore, "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit." *Ibid.* This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack, *see Parke v. Raley*, 506 U.S. 20, 29-30 (1992); *Teague v. Lane*, 489 U.S. 288, 308 (1989); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Voorhees v. Jackson*, 10 Pet. 449 (1836). We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

512 U.S. at 484-86 (footnotes and parallel citations omitted).

Plaintiffs argue that they have not had an opportunity to litigate the factual issues underlying their § 1983 action and that Morales' criminal proceedings should not bar them from their day in court. They argue, citing *Marquez v. Gutierrez*, 51 F. Supp. 2d 1020, 1026 (E.D. Cal. 1999), that before they can be collaterally estopped from arguing that Deputy Winter used excessive force, they must have had a "full and fair opportunity" to litigate the issue.

We previously confronted the possibility of extending the *Heck* bar to a § 1983 action brought by a person other than the convicted defendant in *Cunningham,* 312 F.3d 1148. One of the issues present was whether the § 1983 action by the parents of Soly, who had been killed in the exchange of gunfire with the police, was barred by the criminal conviction of Cunningham, Soly's accomplice. The district court held that the parents' action was barred by *Heck*.

On appeal, we focused on the officers' argument that the parents were "precluded by the California common law of privity from re-litigating issues that were already decided in Cunningham's trial." 312 F.3d at 1155. "Under California law, the collateral estoppel effect of Cunningham's convictions would prevent the Solys from pursuing their § 1983 claims if (1) the issues necessarily decided at Cunningham's trial are identical to the issues in the Solys' § 1983 claims; (2) Cunningham's trial resulted in a judgment on the merits; and (3) the Solys were in privity with Cunningham during his criminal trial." *Id*. The court found that the first two elements were satisfied, but that the third was not. *Id*. at 1156. The panel noted that privity required that the Solys' interests and Cunningham's interests were so similar "that Cunningham was their 'virtual representative'." *Id*. However, Soly's interests diverged considerably from Cunningham's because Cunningham was charged with, and convicted of, murdering Soly.[4]

---

[4]We noted:

*Id*. The opinion concluded that "[c]ommon law privity exceeds the bounds of common sense when a murder conviction prevents not only the murderer, but his victim, from seeking relief," and that the "Solys' § 1983 claims are not barred under *Heck* or common law privity . . . ."

Here, as in *Cunningham*, the first two prongs are satisfied: (1) the issue in Morales' criminal proceeding and in this § 1983 action are identical — whether Deputy Winter used excessive force; and (2) Morales' conviction constitutes a judgment on the merits — Deputy Winter did not use excessive force.

**[10]** However, plaintiffs were not parties to the criminal prosecution of Morales. Accordingly, *Heck* preclusion can only apply if plaintiffs "had an identity or community of interest with, and adequate representation by, the losing party in the first action," and under the circumstances "should reasonably have expected to be bound by the prior adjudication." *Cunningham*, 312 F.3d at 1156 (quoting *State Farm Mut. Auto. Ins. Co. v. Davis*, 7 F.3d 180, 183 (9th Cir. 1993)) (internal quotes omitted). In making this determination, we are guided by the Supreme Court's instruction that "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality." *Ashe v. Swenson*, 397 U.S. 436, 444 (1970).

---

> The jury's verdict rested on Cunningham's actions, not Soly's. It was Cunningham's provocation, not Soly's, that was the focus of Cunningham's trial. And in convicting Cunningham of felony murder, the jury necessarily concluded that he was *a* cause, not *the* cause, of Soly's death. Thus, Cunningham's conviction does not on its face foreclose the possibility that the police also contributed to Soly's death.

312 F.3d at 1156.

**[11]** We conclude that under the particular facts of this case, plaintiffs should reasonably have expected to be bound by the jury's decision in Morales' criminal proceeding and because a favorable decision in plaintiffs' civil action would undermine her conviction, the civil action is barred by *Heck.*

**[12]** Our conclusion is based on, and limited to, the particular facts in this case. First, not only was Morales GPR's accomplice, she was convicted of aiding an abetting GPR in assaulting an officer with the pickup truck, a deadly weapon. Second, a single action by Deputy Winter — shooting GPR — is critical to both Morales' criminal conviction and plaintiffs' § 1983 action. Third, the jury in Morales' criminal trial was instructed that in order to convict Morales it had to find that Deputy Winter was acting within the scope of his employment and did not use excessive force. Thus, Morales could only have been convicted if the jury found that Deputy Winter did not use excessive force, but plaintiffs can only prevail if they prove that he did use excessive force. Fourth, although Morales' reasons for urging that Deputy Winter used excessive force are different from plaintiffs' reasons for so arguing, their interests do not conflict. Thus, we hold that where more than one person engages in a concerted criminal act during the course of which one of the criminals is killed by the police, then when the propriety of the officer's action is critical to the conviction of a surviving criminal, and the deceased's interests in the issue are in no way inconsistent with the surviving criminal's interest in the issue, the "community of interest" is such that the deceased and those asserting claims through the deceased may reasonably be bound by the determination of the issue by a jury in the criminal proceeding.

Our perspective furthers the purposes cited by the Supreme Court when it established the *Heck* bar. The Court noted both the strong judicial policy against the creation of two conflicting resolutions arising out of a single transaction, and its concerns for finality and consistency. *Heck*, 512 U.S. at 484-85.

Here, Morales was convicted of aiding and abetting in the commission of the very crime that GPR was committing — an assault on a police officer — when he was shot by the officer. The criminal jury that convicted Morales determined that the officer did not use excessive force in shooting GPR. Allowing plaintiffs' action to proceed would allow for conflicting resolutions arising out of a single transaction and undermine consistency and finality.

## IV

**[13]** Because we find that: (1) the shooting of GPR was "within the temporal scope of [GPR's and Morales'] crime," *Cunningham*, 312 F.3d at 1154; (2) the shooting of GPR was specifically considered by the criminal jury that convicted Morales and was determined not to constitute excessive force; and (3) under the particular facts of this case there is a sufficient community of interest between plaintiffs and Morales to bind plaintiffs to the criminal jury's finding, the district court's dismissal of this civil action as barred by *Heck v. Humphrey*, 512 U.S. 477, is **AFFIRMED**.