**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| GABBI LEMOS, *Plaintiff-Appellant*, <br><br> v. <br><br> COUNTY OF SONOMA; STEVE FREITAS; MARCUS HOLTON, *Defendants-Appellees.* | No. 19-15222 <br><br> D.C. No. 4:15-cv-05188-YGR <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted En Banc March 23, 2022
Pasadena, California

Filed July 19, 2022

Before: Mary H. Murguia, Chief Judge, and William A.
Fletcher, Marsha S. Berzon, Consuelo M. Callahan,
Andrew D. Hurwitz, John B. Owens, Michelle T.
Friedland, Eric D. Miller, Kenneth K. Lee, Daniel A. Bress
and Danielle J. Forrest, Circuit Judges.

Opinion by Judge Miller;
Dissent by Judge Callahan

## SUMMARY[*]

### Section 1983 / Excessive Force

The en banc court reversed the district court's summary judgment for defendants County of Sonoma, Sheriff Steve Freitas, and Deputy Marcus Holton in a 42 U.S.C. § 1983 action brought by Gabrielle Lemos alleging that a sheriff's deputy used excessive force in arresting her.

The district court held that Lemos's claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Lemos was convicted of willfully resisting, delaying, or obstructing the deputy during the same interaction in violation of Cal. Penal Code section 148(a)(1).

The preclusion doctrine established in *Heck* requires a court to "consider whether a judgment in favor of the plaintiff would *necessarily* imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487.

The en banc court held that because the record did not show that Lemos's section 1983 action necessarily rested on the same event as her criminal conviction, success in the former would not necessarily imply the invalidity of the latter. *Heck* would bar Lemos from bringing an excessive-force claim under section 1983 if that claim were based on force used during the conduct that was the basis for her

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

section 148(a)(1) conviction. Crucially, the criminal jury was told that it could find Lemos guilty based on any one of four acts she committed during the course of her interaction with Deputy Holton. Because the jury returned a general verdict, it is not known which act it thought constituted an offense. Although any of the four acts could be the basis for the guilty verdict, Lemos's section 1983 action was based on an allegation that Holton used excessive force during only the last one. The court held that if Lemos were to prevail in her civil action, it would not *necessarily* mean that her conviction was invalid; and the action was therefore not barred by *Heck*.

The en banc court remanded for further proceedings.

Judge Callahan, joined by Lee, dissented, and would affirm the district court's application of the *Heck* bar to Lemos's § 1983 claim. She wrote that the majority's reason wrongfully presupposed that an uninterrupted interaction with no temporal or spatial break between a § 1983 plaintiff's unlawful conduct and an officer's alleged excessive force can be broken down into distinct isolated events to avoid the application of the *Heck* bar.

**COUNSEL**

Izaak D. Schwaiger (argued), Schwaiger Law Firm, Sebastopol, California; John Houston Scott and Lizabeth N. de Vries, Scott Law Firm, San Francisco, California; for Plaintiff-Appellant.

Richard W. Osman (argued) and Sheila D. Crawford, Bertrand Fox Elliot Osman & Wenzel, San Francisco, California, for Defendants-Appellees.

**OPINION**

MILLER, Circuit Judge:

Gabrielle Lemos appeals from the district court's dismissal of her claim under 42 U.S.C. § 1983 alleging that a sheriff's deputy used excessive force in arresting her. The district court held that Lemos's claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Lemos was convicted of willfully resisting, delaying, or obstructing the deputy during the same interaction. Under *Heck*, a section 1983 action may not proceed if its success would "necessarily require the plaintiff to prove the unlawfulness of his conviction." *Id.* at 486. But because the record does not show that Lemos's section 1983 action necessarily rests on the same event as her criminal conviction, success in the former would not necessarily imply the invalidity of the latter. We therefore reverse and remand for further proceedings.

Late in the evening of June 13, 2015, Sonoma County Sheriff's Deputy Marcus Holton was on patrol in Petaluma, California, when he came upon a pickup truck with a large

trailer stopped in the road in front of a house. Hearing raised voices and a reference to a "fight," he got out of his car to investigate. His body camera recorded what happened next.

Holton approached the driver's side of the truck and asked the driver to leave the vehicle. The driver complied and said that the passenger, Karli Labruzzi, was his girlfriend, that she was drunk, and that she was upset because she had lost her phone. Holton then walked around the truck to confirm the story with Labruzzi. She was leaning out the window and talking to a group of three women standing nearby: her two sisters (one of whom was Lemos) and their mother.

When Holton asked, "Is everything ok?," all four women began yelling at him. After further discussion, Holton said, "I'm not going to leave until I've resolved this," and they answered, "Nothing to resolve." Holton then opened the truck door to see if Labruzzi was injured, at which point Lemos—who would later explain that she had "just graduated from high school" and had consumed "three Jack Daniels and Cokes" earlier in the evening—stepped between him and the door, pointed her finger at him, and shouted, "You're not allowed to do that!" Holton told Lemos to step back and pushed her hand away. After Lemos's mother moved her away, Holton closed the door. The women protested, with Lemos insisting, "You cannot go in the car! You have to have a warrant!" Holton asked them to calm down so that he could explain why he wished to speak to Labruzzi. When they did not do so, he called for backup. The responding deputy, Robert Dillion, later said that he could hear the women's screams over the radio.

Labruzzi eventually got out of the truck. During the next few minutes, all four women continued to remonstrate with Holton, arguing that he should not have opened the door of

the truck and that the investigation should be conducted, in Lemos's words, by "a woman cop." After Dillion arrived, Holton separated Lemos's mother from her daughters to explain that he was trying to investigate whether Labruzzi had been the victim of a "domestic incident." Dillion, meanwhile, made repeated but futile efforts to instruct the daughters, "I need one person to talk at a time." They responded by concurrently requesting "a woman cop," claiming to be sober, accusing Holton of "assault," and disparaging Holton and his mother in sexual terms.

Lemos's mother was apparently not convinced by Holton's explanations and twice returned to where her daughters were standing. The second time she returned, some five minutes after the initial encounter at the truck door, she told Lemos to go inside the house. Lemos began to do so, walking past Holton and ignoring his orders to stop. Holton ran after Lemos and grabbed her wrist in an attempt to handcuff her, but she pulled away. He then tackled her and placed her under arrest. Later that night, Lemos was taken to a hospital, where she was treated and released for injuries she sustained when tackled.

Lemos brought this action against Holton, Sonoma County Sheriff Steve Freitas, and Sonoma County, alleging that Holton had violated her Fourth Amendment right to be free from excessive force. (Lemos also asserted a claim under the First Amendment, but she has now abandoned it.) Soon thereafter, the Sonoma County District Attorney charged Lemos with resisting, delaying, or obstructing a peace officer, in violation of California Penal Code section 148(a)(1). The district court stayed proceedings in the civil action while the criminal prosecution was pending.

The criminal case proceeded to a jury trial. The jury was instructed that to find Lemos guilty, it needed to find beyond

a reasonable doubt that Holton was "lawfully performing or attempting to perform his duties as a peace officer," that Lemos "knew, or reasonably should have known, that [he] was a peace officer performing or attempting to perform his duties," and that she "willfully resisted, obstructed, or delayed [him] in the performance or attempted performance of those duties." The jury was further instructed that "[a] peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining someone or using unreasonable or excessive force in his or her duties."

The instructions stated that the jury could find Lemos guilty based on any one of four acts: (1) if she "made physical contact with [Holton] as he was trying to open the truck door"; (2) if she "placed herself between" Holton and Labruzzi; (3) if she "blocked [Holton] from opening the truck door and seeing or speaking with" Labruzzi; or (4) if she "pulled away when [Holton] attempted to grab her" (just before he tackled her). Although the instructions required the jury to agree unanimously on which act Lemos committed, the verdict form did not require the jury to identify a specific act. The jury found Lemos guilty.

Once the criminal proceedings concluded, the district court lifted its stay. The parties agreed that the defendants would file a motion for summary judgment limited to the argument that Lemos's action was barred by *Heck*.

The district court granted summary judgment to the defendants. The court reasoned that "[g]iven [Lemos's] and her cohorts' continuous screaming and provoking," there was "no temporal or spatial distinction or other separation between the conduct for which Lemos was convicted, by a jury, and the conduct which forms the basis of her Section 1983 claim." The court concluded that "Holton's actions . . . form[ed] one uninterrupted interaction and the jury's finding

that he did not use excessive force would be inconsistent with a Section 1983 claim based on an event from that same encounter."

A divided three-judge panel of this court affirmed. *Lemos v. County of Sonoma*, 5 F.4th 979 (9th Cir. 2021); *see id.* at 987 (Berzon, J., dissenting). We voted to rehear the case en banc. *Lemos v. County of Sonoma*, 22 F.4th 1179 (9th Cir. 2022). We review the district court's grant of summary judgment de novo. *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 854 (9th Cir. 2019).

We begin by reviewing the preclusion doctrine established in *Heck*. In that case, the plaintiff had been convicted of voluntary manslaughter and, while serving his sentence, brought a section 1983 action against prosecutors and a police officer who had allegedly engaged in unlawful acts that resulted in his conviction. 512 U.S. at 478–79. The Supreme Court held that the action could not proceed because "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486. Under *Heck*, a section 1983 action is barred if success in the action would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* But if a criminal conviction has already been reversed, expunged, or otherwise set aside, then a section 1983 action may proceed. *Id.* at 486–87.

*Heck* thus requires us to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. By contrast, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff,

the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (footnote omitted).

The Supreme Court has since emphasized that it was "careful in *Heck* to stress the importance of the term 'necessarily,'" as, for example, when the Court "acknowledged that an inmate could bring a challenge to the lawfulness of a search pursuant to § 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not '*necessarily* imply that the plaintiff's conviction was unlawful.'" *Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (quoting *Heck*, 512 U.S. at 487 n.7). "To hold otherwise," the Court explained, "would have cut off potentially valid damages actions as to which a plaintiff might never obtain favorable termination—suits that could otherwise have gone forward had the plaintiff not been convicted." *Id.*

To decide whether success on a section 1983 claim would *necessarily* imply the invalidity of a conviction, we must determine which acts formed the basis for the conviction. When the conviction is based on a guilty plea, we look at the record to see which acts formed the basis for the plea. *See Smith v. City of Hemet*, 394 F.3d 689, 696–97 (9th Cir. 2005) (en banc); *Sanford v. Motts*, 258 F.3d 1117, 1119–20 (9th Cir. 2001). We follow the same approach when the conviction is based on a jury verdict. As several other courts of appeals have recognized, a court must look at the record of the criminal case—including the jury instructions—to determine which facts the jury necessarily found. *See Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1194 (11th Cir. 2020) (examining what "a jury could have found" to determine that the "facts required for [the plaintiff] to prove his § 1983 case do not necessarily logically contradict the essential facts underlying [his]

convictions," and concluding that "*Heck* does not bar the § 1983 action from proceeding" (internal quotation marks omitted)); *Lora-Pena v. FBI*, 529 F.3d 503, 506 (3d Cir. 2008) (examining the jury instructions to conclude that "the question of whether the officers used excessive force was not put before the jury," so the plaintiff's criminal convictions "would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force"); *see also Barnes v. Wright*, 449 F.3d 709, 716–17 (6th Cir. 2006). An action under section 1983 is barred if—but only if—success in the action would undermine the jury's findings in a way that "would *necessarily* imply or demonstrate that the plaintiff's earlier conviction was invalid." *Smith*, 394 F.3d at 699.

This case involves a conviction for resisting, delaying, or obstructing a peace officer, in violation of California Penal Code section 148(a)(1). That offense has three elements: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *Yount v. City of Sacramento*, 183 P.3d 471, 479 (Cal. 2008) (quoting *In re Muhammad C.*, 116 Cal. Rptr. 2d 21, 24 (Ct. App. 2002)). The second element is particularly significant because California courts have held that an officer who uses excessive force is acting unlawfully and therefore is not engaged in the performance of his or her duties. *People v. White*, 161 Cal. Rptr. 541, 544–45 (Ct. App. 1980); *see In re Manuel G.*, 941 P.2d 880, 885 (Cal. 1997); *People v. Gonzalez*, 800 P.2d 1159, 1178–79 (Cal. 1990). For that reason, the jury at Lemos's criminal trial was instructed that "[a] peace officer is not lawfully performing

his or her duties if he or she is . . . using unreasonable or excessive force."

It follows that *Heck* would bar Lemos from bringing an excessive-force claim under section 1983 if that claim were based on force used during the conduct that was the basis for her section 148(a)(1) conviction. *See Heck*, 512 U.S. at 486 n.6. In that circumstance, to prevail in the section 1983 action, she would have to prove that Holton used excessive force, thus "negat[ing] an element of the offense" of which she was convicted. *Id.*; *see McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (holding that a claim is *Heck*-barred "if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction").

But, crucially, the jury was told that it could find Lemos guilty based on any one of four acts she committed during the course of her interaction with Holton: making physical contact with Holton at the door to the truck; placing herself between Holton and Labruzzi; blocking Holton from opening the truck door; and pulling away from Holton when he attempted to grab her. Because the jury returned a general verdict, we do not know which act it thought constituted an offense. Although any one of the four acts could be the basis for the guilty verdict, Lemos's section 1983 action is based on an allegation that Holton used excessive force during only the last one; at oral argument, Lemos expressly stated that she understood that act to refer to her pulling away from Holton just before he tackled her, and she disavowed any claim based on force used by Holton earlier in their encounter. There would be no contradiction in concluding (as the criminal jury may have) that Lemos obstructed Holton during the lawful performance of his duties by, say, blocking him from opening the truck door while also concluding (as Lemos alleges in this action) that Holton used

excessive force when he tackled her five minutes later. Thus, if Lemos were to prevail in her civil action, it would not *necessarily* mean that her conviction was invalid. The action is therefore not barred by *Heck*.

In reaching a contrary conclusion, the district court reasoned that Holton's acts "form[ed] one uninterrupted interaction" and that there was "no temporal or spatial distinction or other separation between the conduct for which Lemos was convicted . . . and the conduct which forms the basis of her Section 1983 claim." Along similar lines, Holton argues that Lemos's conviction was "based on the entire incident as a whole" and that Lemos could not have been convicted "if any part of Deputy Holton's use of force during the incident was excessive." If that were true, it would not matter which of the four predicate acts the jury agreed on because a finding that Holton used excessive force would invalidate her conviction.

That reasoning, however, cannot be reconciled with the jury instructions in Lemos's underlying criminal case or with California law. As we have explained, the instructions allowed the jury to find Lemos guilty based on any of the four charged acts. And while the instructions specified that "[a] peace officer is not lawfully performing his or her duties if he or she is . . . using unreasonable or excessive force," the use of the word "is"—in the present tense—is significant. Under the instructions, an officer could have been lawfully performing his duties at time A even if, at some later time B, he used excessive force. So if the jury found that Lemos resisted Holton at the truck and that Holton was acting lawfully at the time, it should have found her guilty, even if it also believed that Holton used excessive force when he tackled her five minutes later. Lemos's success in the section

1983 action thus would not necessarily contradict the verdict.

Holton's understanding of the instructions and the verdict makes particularly little sense in light of the California Supreme Court's decision in *Yount*. That case involved a section 1983 claim by an arrestee who had resisted being handcuffed by struggling with the officers and kicking them. *Yount*, 183 P.3d at 475–76. Though the officers eventually managed to restrain him, Yount continued to resist, whereupon one officer, intending to tase Yount, accidentally shot him. *Id.* at 476. Yount pleaded no contest to a violation of section 148(a)(1) and then sued the officer who shot him. *Id.* at 476–77. The California Supreme Court held that the action was not barred by *Heck* because a finding that the officer's use of deadly force was excessive would not necessarily be inconsistent with his conviction. *Id.* at 481–82. The court explained that "[t]he subsequent use of excessive force [did] not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it." *Id.* at 482 (quoting *Jones v. Marcum*, 197 F. Supp. 2d 991, 1005 n.9 (S.D. Ohio 2002)). Even though the civil action and the criminal conviction both arose from "one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer." *Id.* (quoting *Jones*, 197 F. Supp. 2d at 1005 n.9).

More recently, in *People v. Williams*, 236 Cal. Rptr. 3d 587 (Ct. App. 2018), the California Court of Appeal applied *Yount*'s reasoning and explained that "the validity of a conviction of an offense involving a peace officer engaged in the performance of his or her duties depends on whether 'the officer was acting lawfully *at the time* the offense

against the officer was committed.'" *Id.* at 599 (quoting *Manuel G.*, 941 P.2d at 885). In other words, if the officer is acting lawfully and the defendant resists him, the defendant has violated section 148(a)(1). Whatever might happen later, it cannot undo the violation: "The use of excessive force after the completed section 148(a)(1) violation would not invalidate the completed section 148(a)(1) violation." *Id.* at 601. The jury instructions here reflected those principles.

Holton relies on a footnote in our decision in *Smith*, in which we suggested a different approach to reviewing a jury verdict in a section 148(a)(1) case. We observed that "[w]here a defendant is charged with a single-act offense but there are multiple acts involved each of which could serve as the basis for a conviction, a jury does not determine which specific act or acts form the basis for the conviction." *Smith*, 394 F.3d at 699 n.5. So far, so good. But we went on to say that "a jury's verdict necessarily determines the lawfulness of the officers' actions throughout the whole course of the defendant's conduct, and any action alleging the use of excessive force would '*necessarily* imply the invalidity of his conviction.'" *Id.* (quoting *Susag v. City of Lake Forest*, 115 Cal. Rptr. 2d 269, 274 (Ct. App. 2002)). That statement was dictum—*Smith* involved a guilty plea, not a jury verdict—and it was decided before the California Supreme Court decided *Yount*. *See Hooper v. County of San Diego*, 629 F.3d 1127, 1132 (9th Cir. 2011). As we have already explained, applying *Heck* requires looking at the factual basis for a conviction, regardless of whether that conviction is based on a jury verdict or a guilty plea. And where, as here, a jury is instructed that it may find a defendant guilty based on one of several different events, then a guilty verdict does *not* necessarily "determine[] the lawfulness of the officers' actions" throughout the entire encounter. *Smith*, 394 F.3d at 699 n.5. We therefore disapprove of that statement in *Smith*.

As Holton points out, the relevant language from *Smith* reappeared in *Beets v. County of Los Angeles*, 669 F.3d 1038 (9th Cir. 2012). But again, the statement was dictum. Although *Beets* did involve a jury verdict, both the criminal prosecution and the section 1983 action involved the same event: Officers fatally shot a man who was driving a truck toward them. *Id.* at 1040. The passenger in the truck was convicted of aiding and abetting the driver's assault on the officers, and the parents of the deceased driver brought a section 1983 claim, alleging that the officers used excessive force. *Id.* at 1040–41. We held that *Heck* precluded the section 1983 action because success would have necessarily implied the invalidity of the passenger's criminal conviction. *Id.* at 1047–48. We explained that "there are *not* multiple factual bases for [the passenger's] conviction for aiding and abetting in the assault." *Id.* at 1045 (emphasis added). In other words, the section 1983 action was predicated on the same conduct that the criminal jury had already determined was lawful. *Id.* at 1045, 1048. Although we disapprove of *Beets*'s repetition of the *Smith* dictum, the reasoning of *Beets* does not undermine our holding here. In this case, unlike in *Beets*, the jury was instructed that multiple acts could serve as the predicate for the criminal conviction, and we do not know which the jury chose.

Because the district court erred in holding that Lemos's action was barred by *Heck*, we reverse the grant of summary judgment to the defendants. We express no view on the merits of Lemos's claim or on any other defenses that the defendants may assert. We leave those matters for the district court to consider on remand.

**REVERSED and REMANDED.**

CALLAHAN, Circuit Judge, joined by LEE, Circuit Judge, dissenting:

Like a wolf in sheep's clothing, the majority opinion may appear at first blush to simply dispense with the *Heck* preclusion doctrine due to the unique factual scenario presented, but something more troubling lingers beneath the surface. The majority's reasoning presupposes that an uninterrupted interaction with no temporal or spatial break between a § 1983 plaintiff's unlawful conduct and an officer's alleged excessive force can be broken down into distinct isolated events to avoid the application of the *Heck* bar. In this way, the decision creates an escape hatch to *Heck*.

The outcome, which reflects a misapprehension of California criminal law, violates the very purposes cited by the Supreme Court when it established the *Heck* preclusion doctrine. Specifically, it undermines the strong policy against the creation of two conflicting resolutions arising out of a single transaction, and ignores the Supreme Court's concerns for finality and consistency between criminal and civil judgments. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (discussing the purposes underlying *Heck*). For these reasons, I respectfully dissent and would affirm the district court's application of the *Heck* bar to Lemos's § 1983 claim.

The majority's analysis begins and ends with its parsing of the jury instructions provided in Lemos's criminal trial for her violation of California Penal Code section 148(a)(1). The majority recognizes that "*Heck* would bar Lemos from bringing an excessive-force claim under section 1983 if that claim were based on the same conduct as her section 148(a)(1) conviction." That is because to prevail on her § 1983 claim, Lemos would have to prove that Deputy

Holton used excessive force, thereby negating an element of the offense of which she was convicted[1].  Cal. Penal Code § 148(a)(1).  "But," the majority reasons, "crucially, the jury was told that it could find Lemos guilty based on any one of four acts she committed during the course of her interaction with Holton."  Thus, the majority concludes that because "we do not know which act" the jury convicted her on, Lemos's § 1983 action cannot be barred by *Heck*.

There are at least two problems with the majority's reasoning—first, it ignores California's continuous course of conduct rule, and second, under the facts presented, there was no break between any of Lemos's illegal acts and the excessive force she alleges in her § 1983 complaint.

Under California's continuous course of conduct rule, Lemos's conviction for violating section 148(a)(1) necessarily includes all of the acts that comprise a continuous or indivisible transaction.  *People v. McFarland*, 376 P.2d 449, 455–56 (Cal. 1962).  As we correctly explained in our dissent in *Smith v. City of Hemet*:

> The major considerations in determining whether similar acts are part of the same transaction are the amount of time elapsed

---

[1] The majority "disapproves" of what it construes as dicta in *Smith* (repeated later in *Beets*) which states that "a jury's verdict necessarily determines the lawfulness of the officers' actions throughout the whole course of the defendant's conduct, and any action alleging the use of excessive force would '*necessarily* imply the invalidity of his conviction.'" *Smith v. City of Hemet*, 394 F.3d 689, 699 n.5 (9th Cir. 2005) (en banc).  I continue to think this language accurately reflects California law and the spirit of *Heck*, but nevertheless this court remains bound by California's interpretation of what is required for a jury to convict under section 148(a)(1).

between the discrete incidents, and whether there was any break in the criminal activity. *See People v. Jefferson*, 123 Cal.App.2d 219, 221, 266 P.2d 564 (1954) (holding that two distinct acts of assault with a deadly weapon taking place within a fifteen minute period "were a part of the same incident, and they could not reasonably be held to constitute two separate offenses, each complete in itself, and each of which would require a separate charge"); *People v. Mota*, 115 Cal.App.3d 227, 233, 171 Cal.Rptr. 212 (1981).

394 F.3d 689, 709 (9th Cir. 2005) (en banc) (Silverman, J., dissenting). Applying those considerations, *People v. Moreno*, 108 Cal. Rptr. 338, 342–43 (1973) held that two instances of violating section 148 were two separate offenses because thirty minutes elapsed between the two incidents and "[i]n the intervening space of time the defendant had completely calmed down, and ceased his criminal activity."

By contrast, Lemos never cooperated with the officers—rather, as the body camera footage presented to the jury confirms, throughout the roughly seven minutes that elapsed between Lemos's first obstructive encounter with Deputy Holton at the truck and the time of her eventual arrest, Lemos resisted, obstructed, and delayed Deputy Holton in the performance of his duties at every turn. There can be no dispute regarding the facts here, but a narrative description of the conduct simply cannot do it justice. Instead, the video depicting what occurred from start to finish supports the continuous nature of the interaction, which involved not just Lemos but her mother (who was also convicted under section 148(a)(1)) and Lemos's two sisters.

It makes sense then why Lemos was charged and convicted of just a single count of violating section 148(a)(1)—the continuous course of conduct rule bars the state from prosecuting a defendant again for acts that were part and parcel of the same continuous transaction, a rule designed to protect criminal defendants. Again, our dissent in *Smith* explained this well:

> It is this rule that now prevents the State of California from charging Smith anew for the conduct occurring after he first refused to take his hands out of his pockets. And again for refusing to put his hands on his head. And again for not turning around. And again for not coming off the porch. And again for refusing to submit to handcuffing. Smith was charged and convicted of one count of resisting an officer that necessarily encompassed the entire sequence of events leading up to his arrest. If, for whatever reason, Smith wanted to waive the protection of that rule and plead guilty to one identified act, leaving himself open to possible prosecution for acts that otherwise would be dead letters, it was incumbent upon him to say so.

394 F.3d at 709 (Silverman, J., dissenting). For that reason, to paraphrase the California Supreme Court in *Yount v. City of Sacramento*, 183 P.3d 471, 481 (Cal. 2008), "[i]t would be anomalous to construe [Lemos's] criminal conviction broadly for criminal law purposes so as to shield [her] from a new prosecution arising from these events but then, once [she] had obtained the benefits…, to turn around and construe the criminal conviction narrowly so as to permit

[her] to prosecute a section 1983 claim arising out of the same transaction." *Id.* (alterations added). The majority opinion fails to appreciate California law on this issue and thereby creates tension with this legal principle.

Of course, an allegation of excessive force by a police officer is not barred by *Heck* if the alleged act is distinct temporally or spatially from the factual basis for the section 148(a)(1) conviction, because such an allegation would not "necessarily" imply the invalidity of the conviction. *See Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1042–43 (9th Cir. 2012). But the court must determine whether there is a legitimate analytical way to parse the individual's obstructive acts from the officer's use of force. The majority apparently concludes that the four acts identified in the jury instructions provide all the court needs to make its *Heck* determination.

For that reason, I believe some context is useful here. Counsel admitted at en banc oral argument that the defense requested this instruction because they had concerns about whether their clients' verbal conduct would be considered resisting, obstructing, or delaying by the jury. Had the prosecutor not agreed to satisfy defense counsel's concerns, perhaps this case would not be before us at all. And, as *Yount* cautioned, it would "anomalous" to allow defense counsel to use this jury instruction as a shield for criminal law purposes, but as a sword to permit Lemos's § 1983 claim to proceed. *Yount*, 183 P.3d at 481.

Accordingly, the fact that the jury instructions offered four acts which could form the basis for Lemos's section 148(a)(1) conviction cannot alone be determinative of whether the *Heck* bar applies. Under California law, the question remains whether Lemos's obstructive acts can be

separated, temporally or otherwise, from Deputy Holton's alleged excessive force. Here, they cannot.

The cases tend to fall into two categories: the first, where the alleged excessive force occurs after the chain of events underlying the section 148(a)(1) conviction[2], such as in *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) and *Sanford v. Motts*, 258 F.3d 1117, 1118 (9th Cir. 2001) (the *Heck* bar does not apply), and the second, where the alleged excessive force occurs during the chain of events underlying the section 148(a)(1) conviction, such as in *Beets* and *Sanders v. City of Pittsburg*, 14 F.4th 968, 970 (9th Cir. 2021) (the *Heck* bar applies). Thus, if Lemos had been bitten by a police dog after she had been arrested for violating section 148(a)(1), for example, her conviction for resisting an officer would not have barred her § 1983 lawsuit. But the facts underlying Lemos's conviction, including each of the four acts listed in the jury instructions and Deputy Holton's alleged excessive force, all occurred during a single indivisible chain of events before her arrest, and therefore her § 1983 is barred by *Heck*.

This distinction is reflected in *Sanders*, a decision published just months after the underlying opinion in *Lemos* and absent from discussion in the majority opinion. In *Sanders*, the defendant fled from police after being spotted in a stolen car. 14 F.4th at 970. The defendant led police on a car chase and then a foot chase. *Id.* When an officer caught up to the defendant, he resisted. *Id.* The officer then commanded a police dog to bite the defendant's leg, which

---

[2] Even *Yount*, which the majority heavily relies upon, falls into this second category, as it involved an officer's "subsequent" accidental use of deadly force after Yount had been handcuffed. *See Yount*, 183 P.3d at 475–76, 482.

it did. *Id.* The defendant was finally arrested and charged with a violation of section 148(a)(1). *Id.* The defendant pleaded no contest to the charge and stipulated that the factual basis for his plea was "based on the preliminary hearing transcript," which described multiple instances of the defendant resisting. *Id.* Meanwhile, the defendant filed a § 1983 claim against the officer for excessive force in using the police dog. *Id.*

Relying on *Yount*, we rejected the defendant's argument that his § 1983 claim was not *Heck* barred, finding that it could not separate out which of the defendant's several obstructive acts led to his conviction since all of them did. *Id.* at 972–73. Because the dog bite was part of the section 148(a)(1) conviction's factual basis, it was necessarily lawful for purposes of the *Heck* analysis. *Id.* at 972. While Sanders involved a plea rather than a jury trial, its logic applies with equal force here—we may not "slice up the factual basis of a § 148(a)(1) conviction to avoid the *Heck* bar." *Id.*

\* \* \*

"[U]nless one believes (as [the Supreme Court] do[es] not) that a § 1983 action for damages must always and everywhere be available," the long-standing *Heck* preclusion doctrine must not be interpreted in a manner that threatens to swallow the rule. *Spencer v. Kemna*, 523 U.S. 1, 17 (1998).

Nevertheless, the majority engages in the "temporal hair-splitting" cautioned against by courts time and again in search of a distinct break between Lemos's criminal act and Deputy Holton's alleged use of force where none meaningfully exists. *See Fetters v. Cnty. of Los Angeles*, 196 Cal. Rptr. 3d 848, 861 (Cal. Ct. App. 2016). Because no

such break exists, Lemos could only have been convicted if the jury found that Deputy Holton did not use excessive force throughout the interaction, an element of the conviction which the jury was instructed on.  But Lemos can only prevail on her § 1983 claim if she proves that Deputy Holton did use excessive force during that same interaction.  Thus, allowing Lemos's § 1983 action to proceed violates the holding of *Heck* and creates conflicting resolutions arising out of a single event.

Because the majority opinion "expand[s] opportunities for collateral attack" on criminal convictions despite clear Supreme Court guidance to the contrary, I respectfully dissent.  *Heck*, 512 U.S. at 484–85.